## JOHN ENDICOTT *vs.* ELI MATHIS et al.

1. Where an injunction has been allowed by a master, and the material matters in the affidavit inducing the making of the order were contradicted by the records of this court, the Chancellor, on motion, dissolved the injunction.

2. Where an injunction has been obtained on a misrepresentation of facts, it does not alter the case whether that misrepresentation was through inadvertence, misinformation, or otherwise.

3. Where the Chancellor had dissolved an injunction to stay the proceedings of an action of ejectment on the ground that the equity of the bill was fully answered, and subsequently a bill similar in every substantial matter was filed, in which another assumed the position of the complainant in the first bill, for the mere purpose of obviating the difficulty which the proceeding in the other suit interposed to the aid of the court being again obtained, and it was apparent that the suit was got up by the former complainant, and that he was as much interested in it as if he were a party to the record ; and no reason appearing upon the face of the papers for instituting another suit—

4. *Held* that "To countenance these proceedings would encourage litigation and the multiplication of suits. It would be to exercise the injunction powers of the court—to embarrass and retard, instead of promoting justice."

5. While a party is in contempt for disobedience to an injunction, he cannot properly have a hearing on a motion for its dissolution, but when the nature and extent of the punishment to be inflicted for such contempt depend on the determination of the question whether the injunction shall be continued or not, the hearing may be allowed.

6. The court will not allow its process to be disregarded or evaded on mere technical grounds.

7. So where *E. M. and wife* were the lessors of the plaintiff in the action of ejectment, to stay proceedings in which the order was granted, and in the writ of injunction served, the suit restrained is described as one in which *E. M. alone* is the lessor of the plaintiff, there being no other suit pending in which E. M. was the lessor of the plaintiff, and no allegation that there was any doubt as to the suit intended. It was held no sufficient reason to disregard the injunction.

This cause was heard before the Chancellor at February Term, 1852, on motion to dissolve the injunction which had been allowed by a master. The grounds relied upon in support of the motion sufficiently appear by the Chancellor's opinion.

*Mr. Browning,* for the motion.

*Mr. W. Halsted, contra,* cited *Evans* v. *Van Hall, Clark's Ch. Rep.* 22; *John et al.* v. *Pinny et al.,* 1 *Paige Ch. Rep.* 646; *Rogers* v. *Pattison,* 4 *Paige Ch. Rep.* 450; 1 *Russel and Mylne* 193; 1 *Hoffman Ch. Prac.* 450.

CHANCELLOR. The bill in this cause was filed on the 8th day of December last.

In aid of the relief sought, an injunction is prayed for, to stay the proceedings of an action of ejectment brought by the said Eli Mathis against the said John Endicott in the Supreme Court. The ejectment is for lands in the county of Atlantic, and it was noticed for trial at the Atlantic Circuit on the 9th day of December last, the day after the filing of the bill. The application for the injunction was made to James Ewing, Esq., an injunction master, at the city of Trenton, and was allowed.

The motion now is to dissolve this injunction. The grounds relied upon in support of the motion are—

First. That the injunction was obtained by the misrepresentations made to the master. And the records of this court, in connection with the affidavit annexed to the bill, are relied upon in support of the allegation.

Second. That the answer of the defendant, Eli Mathis, fully meets the equity of the bill.

There were other reasons assigned and argued, but I deem it unnecessary to notice them in deciding the case.

Upon the threshold of this investigation, the complainant interposes an objection, which, he insists, should preclude the defendant from being heard upon his motion at this time.

The complainant's counsel reads an affidavit made by the counsel himself, dated the day of the hearing of this motion. It sets out that the injunction issued in this cause was served on the attorney of the plaintiff in the action of ejectment before the opening of the court the day on which the cause was noticed for trial; that notwithstanding such service, when the cause was called, the attorney, after stating to the court the fact of the service of the injunction, and reading

the same to the court, moved the cause, and proceeded with the trial.

It is clear from authority, and there seems great propriety in the rule, that a party in contempt is not entitled to a favor from the court until he has made satisfaction for such contempt. It is said in one of the cases cited on the argument, (*Evans* v. *Van Hall, Clark's Ch. Rep.* 22,) that " it does not seem quite clear at what particular point of the proceeding a party shall be deemed in contempt." But as this is a matter so entirely in the discretion of .the court—where the court is simply vindicating its own dignity—it would seem that each case as it arises, must depend very much upon its own peculiar circumstances.

While a party is in contempt for disobedience to an injunction, he cannot properly have a hearing on a motion for its dissolution; but where the nature and extent of the punishment to be inflicted for such contempt depend on the determination of the question whether the injunction shall be continued or not, the hearing may be allowed.

*Williamson* v. *Caman,* 1 *Gill and Johns. R.* 184.

In the case before us, did the affidavit stand alone in reference to this point, and the facts not denied or explained, the court ought not to permit a disregard of its process, apparently so flagrant, and allow a party to proceed with a motion, which if successful, will secure to him the fruits of his disobedience to the mandates of the court. If such was the question now propounded, I should, without hesitation, answer it in the negative.

But the attorney of the plaintiff in the ejectment suit, and who appears as solicitor and counsel on this motion, has placed on file and read his own affidavit in reply to that which charges the breach of this injunction. He admits the cause was tried, but a variety of circumstances are set out as an excuse for the course pursued. Before moving the cause, he made a statement to the justice of the Supreme Court who held the circuit, and appealed to him whether under all the circumstances it could be construed into disrespect

towards the court for him to proceed with the trial of the cause. The justice declined giving any advice, but at the same time did not in any way discourage his doing so. He also consulted a counselor-at-law, then present, who gave it as his opinion that his proceeding in this trial would be no violation of the injunction. The attorney further states in his affidavit, that " had he supposed the trial of the said cause could be considered as a violation of said injunction, he would most cheerfully have refrained from doing so, and so stated to the court upon moving said trial."

Upon the case as presented by the affidavits, I would, if there were no peculiar circumstances which induce me to think that justice to the defendant demands a different course, require him, before considering the motion for dissolution, to place the opposite party, as near as might be, in the same position at law as the injunction found him at the circuit.

But it may be proper for me here to notice one reason assigned as inducing the attorney to disregard the injunction, lest it might be supposed as influencing me in this decision, and the position taken be regarded as having received the sanction of this court.

In the ejectment suit, Eli Mathis and wife are the lessors of the plaintiff. In the writ of injunction served, the suit restrained is described as one in which Eli Mathis alone is the lessor of the plaintiff. It is argued by counsel, that on account of this discrepancy, it was no contempt to disregard the injunction. Had there been another action of ejectment depending, in which Eli Mathis was the lessor of the plaintiff, or if by this discrepancy there was anything which could lead to the supposition that this was not the action intended by the writ to be restrained, and such was the honest belief of the party, the court could not consider the proceeding with the trial a contempt of its process and authority. But here it is not alleged that there was any doubt as to the suit upon which the writ was intended to operate. If the court should allow its process to be disre-

garded or evaded, on mere technical grounds, its powers would be enfeebled and its usefulness impaired. With the view of maintaining the authority of the court and giving vigor to its jurisdiction, Courts of Chancery have decided that a party is in contempt who knows an injunction has issued, or is about to issue against him, and yet commits the act prohibited before the injunction can be formally issued and served upon him. *Hull* v. *Thomas, Head and another*, 3 *Edward's Ch. Rep.* 236, and cases there cited.

From the facts and circumstances already alluded to, in connection with the conduct of the complainant and Joseph E. West in procuring this injunction, and to which I will presently refer, I do not feel called upon to vindicate the dignity of this court, by refusing the defendant an opportunity of being heard on his motion.

Let us now examine the ground upon which the defendant rests his application for dissolving the injunction.

Was the order procured upon misrepresentations made by the complainant or his agent?

The ejectment was commenced in February Term, 1843, of the Supreme Court. The trial was postponed from time to time, on account of negotiations for settlement between the parties, until it was noticed at the term of September, 1850, of the Atlantic Circuit. On the 9th day of September, 1850, Joseph E. West exhibited his bill of complaint in this court, and obtained an injunction against Eli Mathis, this defendant, restraining further proceedings in the action of ejectment. A special affidavit accompanied the ordinary affidavit to the bill, as required by the rule, assigning the reasons why the injunction had not been applied for until within twenty days of the day of trial. The usual order was made, requiring the complainant to pay the costs incident to bringing the suit at law to trial. The injunction was served and it was obeyed, although the costs were not paid as ordered, and have not been paid up to this time.

The equity of West's bill may be stated in a few words. It is contained in the following allegations: That West

had entered into a written agreement with Eli Mathis and others, for the purchase of the land in question; that he had paid the consideration money; that Eli Mathis had not executed a deed, as stipulated by the said agreement; that after the agreement West entered into the possession, and then sold and conveyed the land by warranty deed to John Endicott, the present complainant, and that the said Mathis had commenced the suit in ejectment, to turn the said Endicott out of the possession of these lands. The prayer is for injunction, and that Eli Mathis be decreed to perform his said contract, or to pay back the consideration money.

Eli Mathis promptly answered this bill of West. The bill was filed on the 9th of September, 1850, and the answer on the 18th of the same month.

A motion to dissolve was argued before Chancellor Halsted. On the 6th day of December, 1850, the Chancellor made an order dissolving the injunction, upon the ground that the equity of the bill was answered.

The ejectment was then noticed for trial, as before stated, in December Term last of the Atlantic Circuit. And now this bill is filed, and an injunction prayed in the name of the defendant in the ejectment suit, John Endicott. It is the same bill, in every substantial matter, as that exhibited by Joseph E. West. The greater part of it is a copy, word for word, from that bill. It is impossible for one not to see, unless willfully blind, that Endicott assumed the position of West, as complainant, for the mere purpose of obviating the difficulty which the proceedings in the other suit interposed to the aid of the court being again obtained on the application of West. The affidavit annexed to this last bill is in the handwriting of Joseph E. West. The special affidavit accompanying the bill, and which I suppose was required by the master, is West's own affidavit, sworn to at Trenton at the time the order was made. The papers all show that this suit was got up by West; that he is the active man in its prosecution, and is as much interested in it as if he was the party on the record.

But how was it that the master ordered this injunction in the face of the former proceedings? In the special affidavit referred to, West, after giving an excuse why the costs required in the order for the first injunction were not paid, swears that he understood that injunction was dissolved, on the ground of the non-payment of these costs. When he made this affidavit, the order of the Chancellor, dissolving the injunction, on the ground that the equity of the bill was fully answered, was on file in the office, not three hundred yards distant, and to which he ought to have resorted for certainty in a matter of so much importance.

But it was insisted upon the argument, that the allegation of Joseph E. West in his affidavit, "that the injunction was dissolved, on the ground of the non-payment of costs," was true, and that the Chancellor did not dissolve the injunction for the reason of the equity of the bill being denied by the answer.

But there is the order signed by the Chancellor, bearing date the 26th day of December, 1850, and filed two days afterwards. It sets out "that the cause was regularly argued upon notice to dissolve the injunction upon the bill of the complainant, and the answer of Eli Mathis, one of the defendants, in the presence of William Halsted, solicitor and counsel of the complainant, and Abraham Browning, solicitor and counsel of the said defendant, Eli Mathis, and the Chancellor having duly considered the same, and being of opinion that the equity of the said bill is fully answered, and that the said injunction ought to be dissolved. It is therefore," &c.. This order cannot be disregarded and treated as a nullity, upon the mere affidavit of a party interested, that he understood the injunction was dissolved for other causes than those stated in the order of the Chancellor. It is hardly worth while to stop for the purpose of criticising this affidavit. And yet it may be observed that while it states the affiant had understood the injunction had been dissolved upon the ground set forth in the affidavit, he neither alleges that he believes this information correct,

nor that he understood the non-payment of costs was the only ground of the dissolution.

But suppose the allegation true. Is there anything contained in the affidavit to show that even if such were the case, the complainant in that suit was entitled to have the injunction revived? Or the propriety of using the name of the present complainant, and by a new suit accomplish the same end? The costs at law have not to this day been paid, nor have the costs of the dissolution of the injunction.

Joseph E. West states further, in his affidavit, that he supposed the ejectment would not again be moved until the matter was settled in chancery. He was the complainant. The defendant's answer was filed on the 18th of December, 1850, and from that period to the filing of this bill, the 8th December, 1851, nearly a year, he had not taken a step to advance his cause. On what was his supposition founded?

This injunction was allowed upon Joseph E. West's affidavit. The material matters in it, inducing the making of the order, are contradicted by the records of this court. This injunction was obtained on a misrepresentation of facts, and it does not alter the case whether that misrepresentation was through inadvertence, misinformation, or otherwise. I do not think the master would have made the order with all the facts before him.

But if it was true that the first injunction was dissolved on the ground stated in the affidavit, to wit, the non-payment of the costs, even then, I can see no occasion for this last bill. This present suit was not instituted because of the unwillingness or inability of Joseph E. West to afford Endicott all the protection he was entitled to in the suit then already depending in West's own name. There was no necessity to change the complainant in the suit. Endicott sets up no equity, and is entitled to no relief which could not as well have been obtained in the first suit as in this one. There is no reason assigned why the decision of the court should be disregarded, except the one referred to as stated in West's affidavit. If John Endicott was entitled to an injunction upon his bill, as the case is now presented

to the court, Joseph E. West was entitled to an injunction on a proper petition in his suit then depending. A case might have arisen to have rendered it necessary for Endicott to come into this court in his own name. But no such case is now made. No reason appears upon the face of the papers, nor was any suggested at the argument, for instituting another suit.

To countenance these proceedings would encourage litigation and the multiplication of suits. It would be to exercise the injunction powers of the court to embarrass and retard, instead of promoting justice.

I think this injunction should be dissolved, on the ground that it was procured under circumstances and in a manner which ought not to receive the sanction of this court.

The same answer has been filed to this as to the first bill, with some immaterial variations, to accommodate it to the substitution of names, and to some other matters which do not touch the equity of the case.

I think the equity of the bill is answered.

Let the injunction be dissolved, with costs.